# EXHIBIT A

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| TODD BERESFORD,<br><br>    Plaintiff,<br><br>vs.<br><br>TYSON FOODS, INC. and TYSON FRESH MEATS, INC.,<br><br>    Defendants. | NO. _____<br><br>PETITION and JURY DEMAND |

COMES NOW the Plaintiff and for his cause of action states the following:

**INTRODUCTION**

1. This is an action under the Iowa common law, the Iowa Civil Rights Act, Age Discrimination in Employment Act, and Title VII challenging Defendants' illegal discrimination and retaliation against Plaintiff.

2. Plaintiff Todd Beresford ("Todd") is a resident of Geauga County, Ohio.

3. Defendant Tyson Fresh Meats, Inc. is a wholly-owned subsidiary of Tyson Foods, Inc.

4. Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (referred to collectively as "Tyson") are both Delaware corporations doing business in Polk County, Iowa.

5. The acts of which Plaintiff complains occurred primarily in Iowa and South Dakota.

**PROCEDURAL REQUIREMENTS**

6. On approximately March 14, 2019, within 300 days of the acts of which he complains, Plaintiff filed charges of employment discrimination against Defendants with the Iowa Civil Rights Commission.

1

7. On approximately July 5, 2019, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

8. On June 1, 2000, IBP Inc. (now known as Tyson) hired Todd as a litigation attorney, replacing Chris Godfrey, who entered private practice.

9. Godfrey helped Todd transition into the Litigation Attorney role.

10. In 2000, Todd learned Godfrey was gay when he attended a barbeque at Godfrey's home where Godfrey introduced Todd to his boyfriend.

11. Todd and Godfrey worked together closely and became friends.

12. In 2005, Tyson promoted Todd to Senior Workers Compensation Specialist.

13. Todd oversaw Tyson's workers compensation program for the Fresh Meats division, including the entire State of Iowa.

14. Approximately 75% of the claims Todd worked on were made by Iowa workers.

15. In 2006, at Tyson's request, Todd wrote a recommendation letter to the Iowa Association of Business and Industry supporting Godfrey's nomination as the Iowa Workers Compensation Commissioner.

16. Todd and Godfrey remained in contact after Godfrey became Commissioner, occasionally meeting for lunch or dinner and emailing about workers compensation issues.

17. Tyson grew frustrated with Godfrey shortly after he became Commissioner.

18. Tyson thought Godfrey was too liberal, and Tyson management became upset that its workers compensation costs were increasing.

19. Tyson held numerous internal meetings about how to "deal" with Godfrey.

20. Former Vice President of Claims Allyn Tatum often referred to Godfrey as a "faggot" or "queer."

2

21. Referring to Godfrey, Tatum told Senior Vice President of Human Resources Rod Nagel, "This little faggot is costing us a lot of money."

22. Because Todd wrote the letter of recommendation for Godfrey, it became a running joke in the workers compensation community that Todd was Godfrey's "boyfriend."

23. Todd routinely attended Iowa Association of Business and Industry meetings in Des Moines on Tyson's behalf and served on the Business and Labor committee.

24. Todd was on the Iowa Workers' Compensation Advisory Committee as an Employer Representative on Tyson's behalf. Todd attended at least four to five yearly board meetings in Des Moines in this role.

25. Todd served on the Iowa Workers' Compensation Attorneys Board of Governors on Tyson's behalf and attended at least two yearly meetings in Des Moines.

26. Todd typically traveled to each Iowa facility 1-2 times a year to meet with management and medical providers regarding workers' compensation issues.

27. In 2009, Tyson arranged a meeting with several large Iowa employers to address their issues with Godfrey.

28. As a result of this meeting, the Iowa Self-Insurers' Association (ISIA) was formed to promote legislative changes in Iowa's workers compensation system.

29. To ensure that Tyson could control ISIA's agenda, Tyson arranged for Todd to be President of ISIA.

30. Over the next few years, Todd assisted in drafting a legislative package to make it more difficult for injured workers to receive workers compensation and limiting their recovery of benefits.

31. In early January 2017, Todd flew to Des Moines on a Tyson jet with the Tyson Fresh Meats executive team, including the president, to meet with top leaders in the Iowa House and Senate regarding workers' compensation legislation.

32. During this trip, Todd discussed the legislation in meeting with former Governor Terry Branstad and Lt. Governor Kim Reynolds.

33. Todd prepared a memorandum for Governor Branstad which discussed Godfrey and demonstrated his perceived bias against employers.

34. Tyson CEO Noel White sent this memo and supporting information to his friend, Debbie Durham, who transmitted it to the Governor's office.

35. In 2017, the Iowa Legislature adopted almost the entire package, saving Tyson an anticipated $4.5 million annually.

36. During the 2017 Iowa legislative session, Todd spent about one week per month in Iowa.

37. Tyson directed Todd to create a list of Iowa legislators who were most helpful in the workers' compensation reform so Tyson could make monetary contributions to their campaigns.

38. In late 2014 or early 2015, Todd discovered that some of Tyson's plants were providing incorrect information to its claims department about the job duties workers compensation claimants were performing.

39. Tyson's Waterloo plant was the primary location providing incorrect claim information.

40. Based on this incorrect information, Tyson was denying workers compensation claims and benefits to injured Iowa employees that should not have been contested.

41. Based on this incorrect information, Tyson was also providing false discovery responses to claimants in contested cases before the Iowa Workers' Compensation Commission.

42. Todd reported this discovery to his supervisor, Melissa Yopp.

43. Todd told Yopp that Tyson could be found to be acting in bad faith for denying claims without a reasonable basis and for providing false discovery responses to claimants and their attorneys.

44. Yopp acknowledged this was a big concern and promised to address the issue with management in Arkansas.

45. Approximately one year later, Todd discovered Tyson plants were continuing to submit incorrect information about claimants' job duties that was still being used to deny workers compensation claims without a reasonable basis and to provide false discovery responses to claimants and their attorneys.

46. Todd once again reported his concerns to Yopp, and she told him to discuss the issue in a presentation for Tyson Fresh Meat's Human Resources Department on workers compensation.

47. During his presentation, Todd discussed the problem at length with the entire Tyson Fresh Meats Human Resources Department. He emphasized how important it was to submit accurate information about claimants' job duties.

48. In December 2017, Tyson appointed Amy Tu as General Counsel.

49. Shortly after Tu's appointment, she began firing middle-aged male employees and replacing them with younger females.

50. In January 2018, Vice President of Legal Nate Hodne transferred out of the legal department to a role in operations. Mr. Hodne was in his fifties and had spent over twenty years in the legal department under at least four previous General Counsels.

51. Tu replaced Hodne with Jane Duke, a woman in her forties.

5

52. From February to April 2018, Tu fired four attorneys, all of whom were middle-aged men.

53. Only two of the Vice Presidents who were employed with Todd are still in Tyson's legal department.

54. Around April 2018, Todd discovered that Tyson plants were *still* submitting inaccurate information about claimants' job duties that was used to deny meritorious workers compensation claims and to provide false discovery responses to claimants and their attorneys.

55. Again, Todd reported the problem to Yopp.

56. Todd identified a specific case in which Tyson's own on-site medical provider indicated the claimant's job duties likely caused the claimant's condition. Yet, Tyson falsely asserted that the claimant was doing a different job, so the claim was inappropriately denied.

57. Todd warned Yopp that this practice had been occurring for years and it could open Tyson up to numerous "bad faith" claims.

58. In late May 2018, Todd received a call from Vice President of Employment Compliance Lola Hithon asking if Todd had acknowledged receiving Tyson's harassment policy.

59. Hithon then vaguely questioned Todd about receiving and responding to emails that were "derogatory in nature."

60. Todd responded that he did not recall anything specific.

61. Hithon proceeded to read a few emails referring to Godfrey as Todd's "boyfriend" or "gay lover."

62. Hithon said the emails were sent to Todd from Tyson's outside workers compensation attorneys.

63. Hithon asked if Todd ever requested that the attorneys stop making inappropriate jokes.

6

64. Todd explained to Hithon that his colleagues were blowing off steam over their frustration with the Commissioner.

65. On June 5, 2018, Todd was called into a conference room with Yopp and Vice President of Human Resources Dan Heffernan.

66. Heffernan told Todd that Tyson was firing him because the emails he received about Godfrey violated the company's harassment policy.

67. Todd asked to see the specific emails Heffernan was referencing, but Heffernan refused.

68. Todd also asked Heffernan if Tyson was investigating any of the individuals within Tyson who sent derogatory emails or said worse things about Godfrey and his sexual orientation.

69. For instance, former Tyson Vice President of Workers Compensation Lynn Tatum had openly and repeatedly made disparaging comments about Godfrey and his sexual orientation.

70. Tatum's former boss, Rod Nagel, had personally heard Tatum's comments and did nothing.

71. Other Tyson executives in Todd's office were well known for sending offensive emails that were racist, sexual, and sexist.

72. Heffernan refused to answer Todd's questions.

73. Tyson did not identify what Todd specifically said or did to be fired.

74. After Tyson fired Todd, Todd learned that Tu had been pushing for his termination, just like she had for many of his male colleagues.

75. Amy Tu was an employee and agent of Tyson, acting at all material times within the scope of her employment and agency.

76. Allyn Tatum was an employee and agent of Tyson, acting at all material times within the scope of his employment and agency.

7

77. Rod Nagel was an employee and agent of Tyson, acting at all material times within the scope of his employment and agency.

78. Melissa Yopp was an employee and agent of Tyson, acting at all material times within the scope of her employment and agency.

79. Nate Hodne was an employee and agent of Tyson, acting at all material times within the scope of his employment and agency.

80. Lola Hithon was an employee and agent of Tyson, acting at all material times within the scope of her employment and agency.

81. Dan Heffernan was an employee and agent of Tyson, acting at all material times within the scope of his employment and agency.

## COUNT I
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

82. Plaintiff repleads paragraphs 1 through 81 as if fully set forth herein.

83. It is the public policy of the State of Iowa, pursuant to Iowa Code Chapter 85, that employers should automatically pay meritorious workers compensation claims.

84. It is the public policy of the State of Iowa, pursuant to Iowa Code Chapter 85, that employers involved in workers compensation claims must provide accurate responses to discovery.

85. Plaintiff engaged in protected conduct by:

    a. repeatedly reporting and protesting Defendants' illegal conduct;

    b. demanding that Defendants stop engaging in illegal conduct;

    c. refusing to participate in and facilitate Defendants' illegal conduct;

86. Plaintiff's protected activity was a determining factor in Defendants' decision to fire him.

8

87. If allowed to go unremedied, Plaintiff's termination would frustrate the well-recognized and defined public policy of the State of Iowa because it would have a chilling effect on employees' willingness to engage in protected activity.

88. Defendants' termination of Plaintiff's employment violated the public policy of the State of Iowa.

89. As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, anguish, humiliation, intimidation, embarrassment, stress, lost enjoyment of life, medical expenses, lost wages, and employment benefits.

90. Defendants acted with willful disregard for Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from engaging in similar conduct in the future, for prejudgment and postjudgment interest, for the costs of this action, and for such other relief as may be just in the circumstances.

## COUNT II
## VIOLATION OF IOWA CIVIL RIGHTS ACT
## AGE & SEX DISCRIMINATION

91. Plaintiff repleads paragraphs 1 through 90 as if fully set forth herein.

92. Defendants discriminated against Plaintiff and fired him in violation of the Iowa Civil Rights Act.

93. Plaintiff's age and/or sex, either individually or in combination, were motivating factors in Defendants' actions.

94. As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, as set forth above.

9

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages, for appropriate equitable and injunctive relief, for prejudgment and postjudgment interest, for attorney's fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT III
## VIOLATIONS OF THE ADEA, 29 U.S.C. § 621, *et seq.*
## AGE DISCRIMINATION

95. Plaintiff repleads paragraphs 1 through 94 as if fully set forth herein.

96. Defendants discriminated against Plaintiff with respect to terms and conditions of his employment and fired him.

97. Plaintiff's age, alone or in combination with his sex, was the but-for cause of Defendants' actions.

98. As a result of Defendants' illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

99. Defendants' violation of the ADEA was willful.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages, for liquidated damages, for appropriate equitable and injunctive relief, for prejudgment and postjudgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the ADEA.

## COUNT IV
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## SEX DISCRIMINATION

100. Plaintiff repleads paragraphs 1 through 99 as if fully set forth herein.

101. Defendants discriminated against Plaintiff with respect to the terms and conditions of his employment on the basis of his sex, alone or in combination with his age, in violation of Title VII.

102. Plaintiff's sex was a motivating factor in Defendants' actions against him.

103. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries as set forth above.

104. Defendant acted with malice and reckless disregard for Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount that will fully and fairly compensate him for his injuries and damages, for punitive damages in an amount sufficient to punish Defendants and to deter them and others from committing similar conduct in the future, for prejudgment and postjudgment interest, for attorney fees, including litigation expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purposes of Title VII of the 1964 Civil Rights Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

                                                  */s/ Paige Fiedler*
FIEDLER LAW FIRM, P.L.C.
Paige Fiedler AT0002496
paige@employmentlawiowa.com
Amy Beck AT0013022
amy@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| TODD BERESFORD,<br><br>       Plaintiff,<br><br>vs.<br><br>TYSON FOODS, INC. and TYSON FRESH MEATS, INC.,<br><br>       Defendants. | Case No.<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:    TYSON FRESH MEATS, INC.

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Petition is attached to this notice.  The attorneys for the plaintiff are Paige Fiedler and Amy Beck of Fiedler Law Firm, P.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa, 50131. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____
CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

# STATE OF IOWA JUDICIARY

Case No. LACL145835
County Polk

Case Title   TODD BERESFORD VS TYSON FOODS INC ET AL

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16**: http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(515) 286-3394**  . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

Date Issued   10/01/2019 03:36:01 PM



District Clerk of  Polk     County

/s/ Christine Simonsen

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| TODD BERESFORD,<br><br>    Plaintiff,<br><br>vs.<br><br>TYSON FOODS, INC. and TYSON FRESH MEATS, INC.,<br><br>    Defendants. | Case No.<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:   TYSON FOODS, INC.

    You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Petition is attached to this notice.  The attorneys for the plaintiff are Paige Fiedler and Amy Beck of Fiedler Law Firm, P.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa, 50131. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

    You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

    If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).


_____
CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

# STATE OF IOWA JUDICIARY

*Case No.* LACL145835
*County* Polk

*Case Title*   TODD BERESFORD VS TYSON FOODS INC ET AL

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16**: http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(515) 286-3394**   .  (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*   10/01/2019 03:36:01 PM



*District Clerk of*  Polk                              *County*

/s/ Christine Simonsen

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| TODD BERESFORD,<br><br>　　　Plaintiff,<br><br>vs.<br><br>TYSON FOODS, INC. and TYSON FRESH MEATS, INC.,<br><br>　　　Defendants. | Case No. LACL145835<br><br><br>ACCEPTANCE OF SERVICE |

The undersigned counsel hereby acknowledges receipt and accepts service of the Original Notices and Petition and Jury Demand on behalf of the above-named Defendants. This acknowledgement is taking place in Fayetteville, Arkansas, on the 9th day of October, 2019.

*/s/ Eva C. Madison*
Eva C. Madison
Littler Mendelson P.C.
The Fulbright Building
217 E. Dickson Street, Suite 204,
Fayetteville, AR 72701
EMadison@littler.com